UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANTHONY M. RAMIREZ,

        Petitioner,

    v.

JAMES A. YATES, Warden,

        Respondent.

Case No. C-03-1817 RMW

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

[Re Docket Nos. 120, 151, 157]

Anthony M. Ramirez ("Ramirez") petitions for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons set forth below, the petition for writ of habeas corpus is denied.

## I.  BACKGROUND

A state court in Marin County convicted Ramirez of residential burglary. At the second phase of Ramirez's bifurcated trial the trial court found beyond a reasonable doubt that Ramirez suffered three prior first degree burglary convictions, one prior attempted first degree burglary, one prior second degree burglary conviction, one prior attempted second degree burglary conviction, and one narcotics sales conviction. Resp't Ex. B, Rep.Tr. 549-550 Dkt. No. 129. The jury then examined certified documents related to those convictions and found the convictions true. *Id.* at 580-582.  The prior burglary convictions were alleged as "strikes" for the purposes of California's Three Strikes

scheme.  Ramirez was sentenced to an indeterminate term of fifty years to life in state prison. Resp't Ex. A, Ct. Tr. 46, Dkt. No. 126.

Ramirez appealed his conviction, which was affirmed by the California Court of Appeal. Resp't Ex. C, Dkt. No. 131. He also collaterally attacked the judgment in state court by filing a petition for a writ of habeas corpus. Resp't Ex. I, Dkt. No. 137. The California Court of Appeals summarily denied Ramirez's petition on December 10, 2001.  Resp't Ex. L, Dkt. No. 140.  The California Supreme Court then denied Ramirez's petition for review on February 20, 2002. Resp't Ex. H, Dkt. No. 136.  The state court judgment became final on May 21, 2002.

Ramirez was required to file a timely federal habeas petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") by May 21, 2003.  However, Ramirez did not file a federal habeas petition until June 14, 2004.  To be timely, the court would need to toll the statute of limitations from May 21, 2003 to June 14, 2004.  On September 28, 2006, the court granted the government's motion to dismiss the habeas petition as untimely. Dkt. Nos. 48, 49. Ramirez appealed, and the Ninth Circuit vacated the dismissal and remanded the case to this court with instructions to review the factors giving rise to equitable tolling and determine whether they provide the bases for equitable tolling in this case. Dkt. No. 67. On March 21, 2013, the court issued an order finding that Ramirez was entitled to sufficient tolling to render his federal habeas petition timely. Dkt. No. 120. Consequently, the court denied the government's motion to dismiss and directed the government to answer the petition. *Id.*

On June 2, 2014 Ramirez filed a "Motion and Request for Court To Review Records and Documents Attached to, and In Support of, Petitioner's April 27, 2005, Motion for Evidentiary Hearing Before Ruling On Merits of Petition's Habeas Claims." Dkt. No. 157.

## II. ANALYSIS

### A.    Legal Standard

A court may grant a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  The court may grant the writ only if the state court's ruling "resulted in a decision that was contrary to, or involved an

United States District Court
For the Northern District of California

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For a state court's decision to be contrary to clearly established federal law, it must apply a rule that contradicts the governing law set forth in Supreme Court cases, or confront a set of facts that are materially indistinguishable from a Court decision and nevertheless arrive at a different result from Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). A state court decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The court cannot grant a habeas petition as being an "unreasonable application" of federal law merely because, in its opinion, the law was incorrectly applied in a case. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Rather, the state court's application of federal law must be "objectively unreasonable" in order to justify granting the petition. *Id.* The review of state court decisions is highly deferential, and state court decisions should be given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

### B.     Ramirez's Claims

Ramirez claims that (1) he was denied due process when the state court used his prior convictions as strikes under California's Three Strikes Law, violating the terms of his prior plea agreements; (2) he suffered from ineffective assistance of counsel because his trial counsel had a conflict of interest; (3) he was denied due process when the jury did not determine all factual issues pertaining to the alleged prior convictions; (4) he was denied due process and the right to trial because he was not tried before an impartial jury; (5) he suffered from ineffective assistance of counsel when the court refused to grant his motion to substitute counsel; (6) he was denied the right to counsel at critical stages in the proceedings; (7) the trial court abused its discretion in denying his motion for self-representation at sentencing; (8)  he was denied due process when the trial court denied his motion for a continuance prior to sentencing; (9) he was denied effective assistance of counsel at various times; (10) the jury was improperly instructed on the burden of proof in connection with Ramirez's prior convictions; (11) the trial court judge was biased; and (12) his appellate counsel was prejudicially ineffective. The court will address each claim in turn.

United States District Court
For the Northern District of California

### 1.  Breach of Prior Plea Agreements

Ramirez argues that he was deprived of due process rights when the trial court rejected his claim that the state violated the terms of his three prior plea agreements by using his prior convictions as strikes under the California Three Strikes Law to calculate his sentence. Pet. 15-21, Dkt. No. 39-2. Further, Ramirez claims that he is entitled to specific performance of the plea bargain based on the law in effect when his prior plea agreements were negotiated and agreed to. *Id.* at 17.

Due process requires that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, the promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).  Claims that a plea agreement was breached are analyzed under state contract law.  *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987).

To the extent that Ramirez argues that he is entitled to specific performance of his prior plea agreements under the law in effect during the negotiation and acceptance of the agreements,[1] the court rejects his claim.

In *People v. Gipson,* a California Court of Appeals held that sentencing the defendant under the Three Strikes Law, which was enacted after the defendant entered into a plea agreement for a prior offense, did not violate constitutional contract clauses. 117 Cal. App. 4th 1065, 1070 (2004). The defendant in this case similarly argued that his plea agreement was a contract between himself and the state, which the Legislature could not impair by subsequent enactments.  *Id.* At 1068.  But the court determined that California contracts, including plea bargains, are "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws . . . ." *Id.* at 1070.  A few years later, the Ninth Circuit in *Davis v. Woodford*, quoting *Gipson*, recognized this principle of California law.[2]  446 F.3d 957, 962 (9th Cir. 2006).

---

[1] When Ramirez's prior plea agreements were negotiated, section 667 of the California Penal Code provided that if Ramirez committed a subsequent felony, his punishment would be increased by one year for a non-serious felony or five years for a serious felony. In 1994, however, California's enactment of the Three Strikes Law, reflected in sections 667(b)-(i) and 1170.12(c) of the Penal Code, allowed for the imposition of a twenty-five years to life sentence for persons with two prior strikes.

[2] In *Davis*, the Ninth Circuit ultimately distinguished the facts before it from *Gipson*: "the court upheld application of the Three Strikes Law against a defendant whose plea agreement in an earlier case 4833 had incorporated section 667(a) by reference. . . . Here, the plea agreement did not merely incorporate existing law by reference; rather, it included a specific promise about how many prior

1  District Courts in California addressing arguments similar to Ramirez's have followed *Gipson's*

2  lead. In *Oberg v. Carey*, the petitioner requested specific performance of his prior plea bargain

3  based on the law as it stood in 1980, when his plea bargain was accepted.  No. C 04-5446 PJH (PR),

4  2007 WL 3225442, at *5-6 (N.D. Cal. Oct. 30, 2007).  The court determined that "[b]ecause plea

5  bargains are interpreted according to the law of the state in which they are reached . . . and

6  California contract law incorporates the state's reserve power to amend the law, petitioner's

7  contention that application of current law to him at his sentencing violated his plea bargain is

8  incorrect, and his due process rights were not violated." *Id.* at 6.

9       In this case, Ramirez argues only that the law has changed, *not* that a plea bargain promise

10  as to a question of fact has been breached or that the language of the prior plea agreements is vague

11  or ambiguous.[3]  Therefore, Ramirez's due process rights were not violated when the state court

12  rejected his claim that the use of his prior convictions in calculating his current sentence violated the

13  terms of his prior plea agreements.

14       Further, to the extent that Ramirez argues that this sentence constitutes a breach of the prior

15  plea agreements and consequently invalidates them, *Lackawanna County Dist. Attorney v. Coss*, 532

16  U.S. 394 (2001), bars his claim.  In *Lackawanna*, the United States Supreme Court held that, with

17  the exception of convictions obtained in violation of the right to counsel, once a state conviction is

18  no longer open to direct or collateral attack, it is "conclusively valid." *Id.* at 404.  If the conviction

19  is later used to enhance a criminal sentence, a petitioner "may not challenge the enhanced sentence

20  through a petition under § 2254 on the ground that the prior conviction was unconstitutionally

21  obtained." *Id.*

22

23

24  convictions would be placed in Petitioner's criminal record as a result of the guilty plea. Petitioner's
    plea bargain did not purport to freeze the law as it was in 1986. Instead, the parties agreed on the

25  facts (number of "priors") that could be used, later, to sentence Petitioner under whatever law might
    then be in effect." *Davis*, 446 F.3d at 962.  In the instant case, Ramirez's plea agreement aligns with

26  the facts in *Gipson*.
    [3] See Pet. 20, Dkt. No. 39-2 (Ramirez asserts that he "entered contracts with the State of California,

27  the terms of which were clearly stated at the sentencing hearings.  Clearly the pleas were not for the
    increased punishment risk mandated by the 3 strikes law.  Had the Petitioner been advised that such

28  pleas would be bound by subsequent changes in the law, he would not have accepted the plea
    agreements[.]")

Accordingly, the trial court did not violate Ramirez's due process rights when it rejected his claim that his three prior plea agreements were breached because his prior convictions were used as strikes under the California Three Strikes Law and enhanced his sentence.

### 2. Counsel's Conflict of Interest

Ramirez sets forth two separate claims of prejudicial conflicts of interest. The first conflict of interest allegedly arose when Ramirez's trial attorney, Deputy Public Defender ("DPD") Davis, declared he had a conflict at a substitution of counsel hearing. Pet. 23, Dkt. No. 39-2. The conflict apparently stemmed from the fact that DPD Davis had supervised DPD Linda Kremer ("Kremer"), who represented Ramirez as defense counsel in a 1993 burglary action. *Id.* at 24. The court then appointed Jack Rauch ("Rauch") as the conflict attorney in the case. *Id.* at 25. Ramirez contends that DPD Davis "manipulated" the trial court to appoint Rauch as the conflict attorney and further manipulated Rauch to submit a report finding no basis for a *Boykin-Tahl* challenge violation on DPD Kremer's 1993 representation. *Id.* at 27. In his investigation, Rauch ultimately found that no court would find Kremer inadequate in her 1993 representation. Pet'r Ex. 2E, Resp't Ex. K, Rep. Tr. 5/10/2000 17, Dkt. No. 139. Ramirez argues that the court knew of a potential conflict of interest involving his defense counsel and therefore was required to inquire into the potential conflict, obtain a waiver of the conflict from petitioner, and give the petitioner the opportunity to obtain new representation. Pet. 28-29, Dkt. No. 39-2.

The second conflict of interest allegedly stemmed from the fact that DPD Davis represented both Ramirez and George Minaidis ("Minaidis"), a defendant in separate and unrelated criminal proceeding, in the year 2000. *Id.* at 31. Ramirez claims that he shared information with DPD Davis regarding incriminating statements Minaidis made to Ramirez related to a robbery-homicide that occurred in 2000. *Id.* at 29-32. Ramirez argues that this knowledge acquired by DPD Davis resulted in a conflict of interest and DPD Davis should not have continued to represent Minaidis and Ramirez in their respective criminal proceedings. *Id.* at 32. Because of these conflicts of interest, Ramirez contends that he was deprived of his Sixth Amendment right to effective assistance of counsel. *Id.* at 33.

United States District Court
For the Northern District of California

The Sixth Amendment's right to conflict-free counsel is violated only if the conflict "adversely affected" trial counsel's performance. *Alberni v. McDaniel*, 458 F.3d 860, 870 (9th Cir. 2006). "'[A]n actual conflict of interest mean[s]' precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (citation omitted). A conflict of interest can arise when counsel represents multiple defendants whose interests are hostile to one another. In order to establish a violation of the Sixth Amendment, a petitioner must demonstrate that: (1) counsel actively represented conflicting interests, and (2) an actual conflict of interest adversely affected counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980).

An "actual conflict of interest" only occurs when counsel "actively represented conflicting interests." *Strickland v. Washington*, 466 U.S. 668, 692 (1984). A theoretical or potential conflict is insufficient to constitute actual conflict; instead counsel must have actively represented conflicting interests. *Cuyler*, 446 U.S. at 350 (holding that "the possibility of conflict is insufficient to impugn a criminal conviction"); *Bragg v. Galaza*, 242 F.3d 1082, 1087, *amended* 253 F.3d 1150 (9th Cir. 2001). For example, "[t]o show an actual conflict resulting in an adverse effect, [the petitioner] must demonstrate that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006) (internal quotation marks omitted).

Ramirez's first claim of conflict of interest fails because the Supreme Court has not extended Sixth Amendment conflict of interest jurisprudence beyond conflicts involving multiple concurrent representations. *Mickens*, 535 U.S. at 162, 174–76 (stressing that Rule 44(c) of the Federal Rules of Criminal Procedure "treat[s] concurrent representation and prior representation differently, requiring a trial court to inquire into the likelihood of conflict whenever jointly charged defendants are represented by a single attorney . . . but not when counsel previously represented another defendant in a substantially related matter, even where the trial court is aware of the prior representation.")

Ramirez mischaracterizes the Sixth Amendment in this context, which requires "state trial courts to investigate timely objections to multiple representation." *Sullivan*, 446 U.S. at 346 (referring to the rule set forth in *Holloway v. Arkansas*, 435 U.S. 475 (1978)). Here, Ramirez

asserts a situation in which the same Public Defender's Office represented him in a prior criminal proceeding, one that is not within the scope of Sixth Amendment conflict of interest protections.  In any case, Ramirez did not assert any "actual conflict" in his allegations, as required to prove Sixth Amendment prejudice, and the trial court's appointment of Rauch as conflict attorney and Rauch's inquiry into the potential conflict dispelled any potential conflict.

With respect to Ramirez's second claim of conflict of interest, again, Ramirez misinterprets the Sixth Amendment protection in the context of an attorney's conflict of interest.  Ramirez seeks to apply the protection to a situation in which DPD Davis represented Minaidis and Ramirez in separate and independent proceedings in the year 2000.  Further, Ramirez fails to show how this alleged conflict adversely affected his counsel's performance with respect to his proceeding. He only vaguely states that the second conflict caused a deeper division in the attorney-client relationship.  Pet. 33, Dkt. No. 39-2.

In conclusion, Ramirez fails to assert any conflict of interest claim resulting in ineffective assistance of counsel and the state court was not unreasonable in rejecting his claim.

### 3.  Right to Jury Trial in Connection With Prior Convictions

Ramirez claims he was denied his constitutional right under the Fifth, Sixth, and Fourteenth Amendments to a jury trial with regard to all issues relating to his prior convictions. Pet. 34, Dkt. No. 39-2. He alleges that the trial court made several factual determinations that should have been decided by the jury, such as the fact that Ramirez was the person who committed the prior convictions and that Ramirez's prior convictions were serious felonies, because they were used to take his sentence beyond the six year maximum for his burglary conviction.  *Id.* at 40.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury. U.S. Const. amend. VI.  This constitutional right to a jury trial has been made applicable to state criminal proceedings via the Fourteenth Amendment's Due Process Clause. *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny extended a defendant's right to trial by jury to the fact-finding used to make enhanced sentencing determinations as well as the actual elements of the crime.  *Apprendi* established that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 488–90 (emphasis added).

Under *Apprendi*, it is clear that Ramirez does not have a constitutional right to a jury trial on the fact of a prior conviction.  Further, the questions which Ramirez asserts violate *Apprendi* have been found to comport with its rule.  *See Franco v. Haviland*, No. C 10–01102 EJD (PR), 2011 WL 6736051, at *5 (N.D. Cal. Dec. 21, 2011) (finding no *Apprendi* violation in trial court's review of record of prior conviction and determination of defendant's identity and that prior conviction was a "serious felony"); *see also People v. McGee*, 38 Cal. 4th 682, 685, 714-15 (2006) (holding that the trial court's inquiry into whether a prior conviction qualified as a "serious felony" for purposes of California's Three Strikes law does not violate the federal constitutional right to a jury determination for facts increasing sentence).

California Penal Code Section 1025 separately provides a state statutory right to a jury trial in this context.  It sets forth that "the question of whether or not the defendant has suffered the prior conviction shall be tried by the jury[.]"  Further, "the question of whether the defendant is the person who has suffered the prior conviction shall be tried by the court[.]"  The California Supreme Court confirmed in *People v. Epps* that "[t]hough subdivision (c) of section 1025 gives the question of identity to the court, the question whether the alleged prior conviction ever occurred, when legitimately at issue, remains for jury determination under subdivision (b)." 25 Cal. 4th 19, 25 (2001). The court also confirmed that questions, including what the offense was, whether the court sentenced the defendant to prison, or whether a prior conviction is a serious felony for purposes of the three strikes law, were for the court, not the jury.  *Id.* at 23, 25-26.

While the California Court of Appeals and California Supreme Court summarily denied Ramirez's petition for a writ of habeas corpus, the California Court of Appeals addressed this issue in its order affirming Ramirez's conviction. Cal. Order 2, Resp't Ex. C, Dkt. No. 131.  It determined that it was bound by the rules set forth in Section 1025 and *People v. Epps*, as outlined above.

Under state statutory law, Ramirez was entitled to a jury trial on the issue of whether he suffered an alleged prior conviction, which he received.  *See* Resp't Ex. B, RT 580-81, Dkt. No. 129. Therefore, the court denies Ramirez's claims and cannot say that the state courts determination regarding these claims was contrary to or involved an unreasonable application of clearly established federal law or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### 4. Juror Bias

Ramirez argues that jurors number four and seven were biased in violation of his Sixth Amendment right to a fair trial. Pet. 44, Dkt. No. 39-2. He asserts that DPD Davis failed to challenge these jurors for cause or use a peremptory challenge to ensure Ramirez's right to a fair trial by impartial jurors. *Id.* at 45.

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." *Tinsley v. Borg*, 895 F.2d 520, 523-24 (9th Cir.1990) (internal quotations omitted). Because Ramirez's claims stem from DPD Davis' decision not to challenge the seating of two jurors with peremptory challenges, Ramirez must show that, as a result of his trial counsel's failure to exercise peremptory challenges, the jury panel contained at least one juror who was biased. *Davis v. Woodford*, 384 F.3d 628, 643 (9th Cir. 2004). To determine whether a juror is biased, the court asks whether the juror had such fixed opinions that he or she could not impartially judge the defendant's guilt. *Id.* at 643.

Ramirez argues that juror number four's bias stemmed from his son's conviction for a similar burglary offense. Pet. 45, Dkt. No. 39-2. However, when asked whether this would affect his impartiality, the juror indicated that he felt this experience with his son would not in any way affect his ability to serve as a juror. Pet'r Ex. 4A, Resp't Ex. B and N, Rep.Tr. 101, Dkt. Nos. 127 and 142. Additionally, the prosecutor requested that juror number four be removed for cause, but the court denied the request. *Id.* at 100-101.

Here, there is nothing to indicate that juror number four had a fixed opinion or could not judge Ramirez's guilt impartially because his son was convicted of a similar crime. *See Anderson v. McEwan,* No. EDCV 10–0782–CAS (JEM), 2013 WL 4517898, at *37 (C.D. Cal. Aug. 26, 2013) (court found no bias in juror who had been victim of sexual assault, similar to crime being charged, when she assured court that this experience would not affect her ability to act properly as a juror).

Ramirez asserts that juror number seven's bias stemmed from the fact that he was a victim of a similar burglary. Pet. 45, Dkt. No. 39-2. He contends that the juror should have been questioned further about this experience and that it was "highly unlikely" that he could have remained impartial

when he suffered from such a similar crime. *Id*. at 49.  Ramirez further contends that juror number seven gave misleading answers and concealed facts, and that the trial court failed to conduct an adequate voir dire of juror number seven.  *Id*. at 50.  He finally alleges that DPD Davis did not make a record of defense objections. *Id*.

At trial, the court asked the jurors whether they had ever been a victim of burglary or theft-related offense. Pet'r Ex. 5A, Resp't Ex. N, Rep.Tr. 3, Dkt. No. 142.  Juror seven responded "Yes, I think it was around 1970, my house was broken into when I was living in Marin County."  *Id*. The court then asked whether the juror was home at the time and he responded that he was not.  He also had no knowledge of whether the burglar was apprehended.  *Id*. at 4.  Next, the court inquired, "[i]s there anything about that experience 30 years ago that would interfere with your ability to be a fair and impartial juror in this case involving a charge of an offense similar to that which you, yourself, experience?"  Juror number seven replied, "It's been a long time ago, I don't think so, I really don't." *Id*.  Again, there is nothing present to indicate that juror number seven had a fixed opinion or could not judge Ramirez's guilt impartially because he was a victim of a similar crime 30 years prior.  Moreover, Ramirez does not set forth any evidence to support his allegations that juror number seven gave misleading answers or concealed facts, or that DPD Davis did not make a record of defense objections.  Habeas relief cannot be granted on unsupported allegations.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (holding that conclusory allegations do not warrant habeas relief).

### 5. Motions to substitute counsel during trial and before sentencing

Ramirez contends that the trial court abused its discretion when it failed to grant his motion to substitute counsel during trial and before sentencing. Pet. 51-53, Dkt. No. 39-2. Specifically, Ramirez alleges that the trial court failed to adequately inquire into the breakdown in the attorney-client relationship and focused exclusively on DPD Davis's competence at both hearings. *Id*. at 52.

The Sixth Amendment ensures "an accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland,* 466 U.S. at 685. However, "the Sixth Amendment does not guarantee a 'meaningful relationship' between a client and his attorney." *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) (quoting *Morris v. Slappy,* 461 U.S. 1, 14, (1983)). Accordingly, when a defendant makes a motion for

substitution of counsel the trial court must determine if an irreconcilable conflict exists in making its decision. *Brown v. Craven*, 424 F. 2d 1166, 1170 (9th Cir. 1970). On federal habeas review, the court does not determine whether the trial court abused its discretion in denying a motion for new counsel. *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc). Instead, the court determines whether the conflict between a Defendant and his attorney amounted to an irreconcilable conflict in violation of the Sixth Amendment. *Id.*

In order to determine whether an irreconcilable conflict existed the court must examine "(1) the nature and extent of the conflict between [Ramirez] and his attorney, and (2) whether that conflict deprived [Ramirez] of the representation to which he was entitled by the Sixth Amendment." *Id.* at 1027. An irreconcilable conflict in violation of the Sixth Amendment occurs "only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." *Stenson,* 504 F.3d at 886; *see also Schell*, 218 F.3d at 1026. Conversely, "disagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication." *Id.*

First, Ramirez contends that the trial court abused its discretion when it failed to grant his motion to substitute counsel during trial. Pet. 51, Dkt. No. 39-2. Ramirez claims that while the prosecution's leading witness was testifying, counsel was not taking notes or paying attention to the testimony. *Id.* Instead, Ramirez asserts, that counsel was reading the California Vehicle Code for approximately 30 to 35 minutes, a book that had "nothing" to do with the case at hand. *Id.* During this period, Ramirez claims that the witness was testifying to his identification. *Id.* At this point Ramirez became so "enraged and disgusted" with counsel that he stood up "cussed out" DPD Davis and got up and left the courtroom without permission. *Id.* Ramirez claims this caused him to have no trust or confidence in his counsel and could not communicate with him. *Id.* at 52.

Second, Ramirez contends that the trial court abused its discretion when it failed to grant his motion to substitute counsel on the day of sentencing. *Id.* Ramirez claims the court denied his second request without considering the breakdown in the attorney-client relationship. *Id*. Further, Ramirez claims that repeated request for new counsel is a "clear signal of the breakdown" and "obviously was indicative of irreparable and irreconcilable differences." *Id*. Ramirez argues that the court focused almost exclusively on DPD Davis's competence and argues that the fact that DPD

United States District Court
For the Northern District of California

1    Davis "was a seasoned and experience attorney" does not guarantee that he provided Ramirez with

2    effective assistance of counsel. *Id.*

3    Ramirez cites *United States v. Nguyen*, where the Ninth Circuit reviewed the denial of a

4    continuance and a substitution of counsel for abuse of discretion by the district court. 262 F. 3d 998

5    (9th Cir. 2001). In *Nguyen*, the trial court did not have a separate hearing to consider the defendant's

6    motion to substitute counsel. *Id.* at 1000.  Instead, the trial court questioned the defendant briefly

7    before jury selection. *Id.*  The attorney expressed that the defendant was not communicating with

8    him and that he would like for the defendant to retain private counsel if that is what he wished. *Id.*

9    The court failed to consider the motion to substitute counsel because it would delay trial and the

10   judge had traveled a long distance. *Id.* at 1001. The court held that the district court had abused its

11   discretion because it did not consider the defendant's Sixth Amendment rights against any

12   inconvenience and delay in denying the Defendant's request. *Id.* at 1003-1004.

13   Additionally, Ramirez cites *Brown v. Craven*, a habeas case that involved a defendant that

14   had made four motions for new counsel during the long period of delay before his trial. 424 F.2d

15   1166, 1169 (9th Cir. 1970). In *Brown*, the state trial court summarily denied the motions, and made

16   no inquiry into the cause of defendant's motion nor took any other steps to restore the defendant's

17   confidence. *Id.* As a result the defendant "was forced into a trial with the assistance of a particular

18   lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he

19   would not, in any manner whatsoever, communicate." *Id.* The court held that this all led to a

20   violation of defendant's Sixth Amendment rights. *Id.* at 1170.

21   The record reflects that Ramirez had three separate hearings to substitute counsel. Pet'r Ex.

22   2A, 6A, and 6D, Resp't Ex. N. Dkt. No. 142. At each hearing Ramirez had ample opportunity to

23   discuss his concerns with the court. *Id.* at 4-6. At the October 3, 2000 hearing, Ramirez complained

24   that DPD Davis was not taking notes, was reading the vehicle code, and that he did not have one

25   investigator assigned to his case. Pet'r Ex.6A, Resp't Ex. N. Rep. Tr. 10/03/2000 at 4-6, Dkt. No.

26   142. Ramirez expressed frustration that DPD Davis was allegedly not "concentrating" and not

27   asking enough questions of witnesses. *Id.*

28   DPD Davis addressed Ramirez's concerns. *Id.* at 6-9. DPD Davis explained that he did take

notes but only of areas he wanted to explore. *Id.* He explained that he only read a police report while

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

witnesses were testifying, which he used to cross-examine. *Id*. He also explained that he failed to cross-examine certain witnesses at length as a matter of strategy because he did not want provide an opportunity for the witnesses to re-enforce their testimony. *Id*. DPD Davis also explained that he had one investigator assigned to all of his cases who is very competent and always available, but felt there was nothing to investigate. *Id*. The trial court further stated that it watched the courtroom and assured Ramirez that DPD Davis was taking notes and that it did see DPD Davis reading the vehicle code during a break and not when a witness was testifying. *Id*. at 11. The trial court explained that DPD Davis was a competent attorney and that an aggressive cross examination of a fragile witness could be a detriment rather than a benefit to a defendant. *Id*. Finally, the trial court expressed that while Ramirez was understandably upset given the testimony in his case, she found no evidence of a breakdown in the attorney-client relationship. *Id*. at 11.

At the January 10, 2001 motion for substitution of counsel, Ramirez first complained that counsel was not able to get early resolution in his case. Pet'r Ex. 6D, Resp't Ex. N. Rep. Tr. 1/10/2001 at 4-6, Dkt. No. 142. Second, Ramirez complained about the lack of investigation in his case. *Id*. at 5. Third, Ramirez complained that DPD Davis had not adequately advised him about the likeliness of success on the motion to strike his prior convictions. *Id*. at 5-6. Fourth, Ramirez complained that DPD Davis had not adequately cross-examined the witnesses and had been inattentive during testimony. *Id*. at 7-8. Fifth, Ramirez complained that DPD Davis had not made any post-trial motions or sufficiently challenged the validity of the prior convictions. *Id*. at 8-9. Lastly, Ramirez complained that DPD Davis did not challenge the inconsistencies in his probation report. *Id*. at 8-9.

DPD Davis responded to Ramirez's complaints. *Id*. at 10-17. DPD Davis outlined the extensive work he had done in connection with the motion to strike the priors, explained that he urged an early resolution of the case and that Ramirez was not open to accepting the 25 years to life offer. *Id*. at 11-17. DPD Davis claimed that he urged Ramirez to take the offer given the evidence and the fact that the district attorney had not included and overlooked several priors in the original complaint. *Id*. DPD Davis explained that he believed that upon closer inspection of Ramirez's criminal history the district attorney would add the missing priors. *Id*. Moreover, DPD Davis explained his trial strategy, tactics, and his approach for cross examining witnesses. *Id*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

Ramirez's case differs from *Brown* and *Nguyen*. First, *Nguyen* differs from Ramirez because it was a federal criminal case on direct appeal. 262 F. 3d at 1002. *Nguyen* was not a petition for federal habeas corpus review. *See Schell* 218 F.3d at 1026 (holding that on federal habeas review, the court does not determine whether the trial court abused its discretion in denying a motion for new counsel but determines whether a Sixth Amendment violation occurred). Second, *Nguyen* and *Brown* differ from this case because the courts in those cases did not even consider the Defendants' motions. Here, the court heard Ramirez at length about his concerns at all three of his hearings. Third, *Nguyen* and *Brown* differ because the attorneys in those cases admitted to a breakdown in the relationship. *See Nguyen,* 262 F. 3d at 1000; *see also*, *Brown,* 424 F.2d at 1170.  Neither of the defendants would speak with their attorney. *Id.* Here, DPD Davis did not express a breakdown but expressed ongoing communication and provided reasonable explanations for the tactical decisions Ramirez challenged. Moreover, Ramirez failed to allege a breakdown or present any evidence of a breakdown in communication between DPD Davis and himself. As a result, the court failed to find a breakdown in the relationship and found no merit in any of his complaints.

Nothing in the record suggests a complete breakdown in the attorney- client relationship. On the contrary, the record reflects ongoing communication between Ramirez and DPD Davis throughout the proceedings. The repeated motions suggest dissatisfaction by Ramirez with the outcome of his case and a frustration with his attorney's approach. The court has expressly said that "disagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication." *Stenson,* 504 F.3d at 886; *see also Schell,* 218 F.3d at 1026.  Accordingly "not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights." *Schell,* 218 F.3d at 1026.

### 6.  Right to Counsel

Ramirez alleges he was denied his Sixth Amendment right to counsel at critical stages in the proceedings.  Pet. 54, Dkt. No. 39-2. He asserts specifically that Rauch, the attorney appointed by the court as his conflict counsel, was not present during the litigation of the validity of his prior conviction.  *Id.* at 55.

The Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings. U.S. Const. amend. VI; *Gideon v. Wainwright*, 372 U.S. 342 (1963).

Rauch was appointed by the court for the limited purpose of evaluating whether one of Ramirez's previous convictions should be disregarded by the Court for ineffective assistance of counsel. Pet'r Ex. 2E, Resp't Ex. N, Rep. Tr. 5/10/2000 at 7, 11-12, Dkt. No. 142. Rauch was appointed because the prior conviction was handled by Kremer, at the Public Defender's Office. Ramirez's principal counsel DPD Davis could not investigate the attorney's work since he served as her direct supervisor at that time. *Id.*

On May 10, 2000, the court heard Ramirez's motion to substitute Rauch as his counsel. At this hearing the court and the attorneys clarified Rauch's role in Ramirez's case. *Id.* at 1-23. Specifically the court stated that DPD Davis was Ramirez's primary attorney and that Rauch was to investigate whether the prior conviction was defective because of inadequate assistance of counsel. *Id.* at 21. Further, the court relieved Rauch of his role on the condition that his investigation was complete. *Id.* at 22. Besides the limited role that Rauch filled, DPD Davis was present for all critical stages of Ramirez's cases, including the trial on his priors. Therefore, Ramirez was not denied counsel at any critical stage of the proceedings.

### 7. Self-Representation at Sentencing

Ramirez claims that the trial court abused its discretion in denying his *Faretta* motion for self-representation at sentencing. Pet. 58, Dkt. No. 39-2. On January 10, 2001, Ramirez moved for a substitution of counsel and a continuance to prepare for sentencing. Pet'r Ex. 2D, Resp't Ex. N, Rep. Tr. 1/10/2001 1-10, Dkt. No. 142. He also made an oral request that in the event the trial court denied his motion that the court consider a motion for self-representation. *Id.* at 10. The trial court heard and denied the motion to substitute counsel and denied the motion for self-representation as untimely. *Id.* at 19.

A criminal defendant has a constitutional right to self-representation at trial. *Faretta v. California*, 422 U.S. 806 (1975). However, the right to self-representation is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). "*Faretta* requires a defendant's request for self-representation be unequivocal, timely, and not for purposes of delay." *Stenson,* 504 F.3d at 882; *see also United*

*States v. Erskine,* 355 F.3d 1161, 1167 (9th Cir. 2004); *United States v. Arlt,* 41 F.3d 516, 519 (9th Cir. 1994). Moreover, the right to self-representation is disfavored and courts should "indulge in every reasonable presumption against waiver [of counsel]." *Brewer v. Williams*, 430 U.S. 387, 404, (1977); *see also Sandoval v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2000) (stating "the disfavored status the right to self-representation enjoys vis-a-vis the right to counsel"); *McCormick v. Adams*, 621 F.3d 970, 978 (9th Cir. 2010).

In *Faretta,* the Supreme Court did not state a specific time frame in which a request for self-representation qualifies as timely but only indicated that a motion for self-representation made "weeks before trial" is timely. 422 U.S. at 835; *see also Stenson,* 504 F. 3d at 1061.  The Ninth Circuit has held a motion to proceed pro-se is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay. *Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir. 1982); *see also United States v. Smith*, 780 F.2d 810, 811 (9th Cir. 1986) (holding "that a demand for self-representation is timely if made before meaningful trial proceedings have begun.").

Here, Ramirez moved for self–representation on the day set for sentencing. Pet'r Ex. 2D, Resp't Ex. N, Rep. Tr. 1/10/2001 1-10, Dkt. No. 142.  The trial court denied the motion because granting the motion would require a continuance, and Ramirez's case had already been continued on several occasions. *Id.* at 19. Further, the court found that Ramirez had not offered any facts that warranted relieving him of his counsel. *Id.* Accordingly, it was reasonable for the trial court to deny his request as untimely. *See Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990); *see also United States v. Smith*, 780 F.2d 810, 811-812 (9th Cir. 1986).

Moreover, Ramirez's motion for self-representation is not clearly unequivocal. *See Adams v. Carroll,* 875 F.2d 1441, 1444 (9th Cir. 1989) (request to proceed pro se must be unequivocal). Here, Ramirez made his request for self-representation as an alternative to his motion for substitution of counsel. Pet'r Ex. 2D, Resp't Ex. N, Rep. Tr. 1/10/2001 at 10, Dkt. No. 142. This suggests that his preference was to be represented by substitute counsel, not to represent himself. Accordingly, it would have also been reasonable for the court to deny his motion for self-representation because it was equivocal. *See Jackson*, 921 F.2d at 888 (holding that the state trial judge did not err in denying the defendant's request for self-representation because being disappointed by the trial court's denial of his motion for substitute counsel did not demonstrate to a reasonable certainty that he in fact

wished to represent himself); *see also Burton v. Cate*, 546 F. App'x 624 (9th Cir. 2013) (stating, "fairminded jurists could disagree about whether [the defendant's] seemingly contradictory statements at [his] hearing rendered his [ ] motion equivocal under Supreme Court precedent.").

Therefore, the trial court's denial of Ramirez's *Faretta* motion at sentencing as untimely was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

### 8. Continuance Prior to Sentencing

Ramirez contends that he was denied due process when the trial court denied his motion for a continuance prior to sentencing. Pet. 60-61, Dkt. No. 39-2.

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589, (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (stating, "broad discretion must be granted to trial courts on matters of continuances"). Further, in *Morris v. Slappy*, the Supreme Court explained that "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." 461 U.S. at 11-12 (*quoting Ungar* 376 U.S. at 589). There is no test for deciding when a denial of a continuance is so arbitrary as to violate due process. *See Ungar* 376 U.S. at 589. Accordingly, a reviewing court must consider the circumstances present in the case, particularly the reasons presented to the trial judge at the time the request is denied. *Id.* Moreover, habeas relief is only available when a showing of actual prejudice to a petitioner's defense resulted from the refusal.  *See Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997).

The record reflects that on January 10, 2001, the day of sentencing, Ramirez moved for a substitution of counsel and a continuance. Pet'r Ex. 2D, Resp't Ex. N, Rep. Tr. 1/10/2001 1-10, Dkt. No. 142.  At the hearing on this motion, Ramirez reasoned that he needed additional time to challenge his probation report and submit mitigation evidence at sentencing which DPD Davis allegedly refused to do. *Id.* DPD Davis explained that the priors had been challenged through the trial and Ramirez's *Romero* motion to strike one or more prior convictions. *Id.* at 16-17. As the trial

court had received the *Romero* motion and observed the trial, DPD Davis stated he felt the trial court was well aware of whom Ramirez was and the mitigating factors, which were included in the *Romero* motion. *Id.*  The trial court acknowledged that it was familiar with the additional material Ramirez sought to provide and explained why the court previously denied Ramirez's motion to strike one or more prior convictions and explained that because of his criminal history his sentence was mandated by state law. *Id.* at 18-19. Further, the court explained that the outcome and sentencing Ramirez faced "had nothing to do with any lack of advocacy skills of [DPD] Davis". *Id.*

The record also reflects, that same day, the court gave Ramirez a second chance to address his motion for a continuance just before his sentencing began. Resp't Ex. B, Rep. Tr. 1/10/2001 20-32, Dkt. No. 130. Ramirez reiterated that he wanted a continuance to challenge inconsistencies in the probation report and wanted to submit mitigation evidence. *Id*. at 20. The court asked what Ramirez would provide if given more time. *Id.* Ramirez stated he would have counselors come in to testify about his progress to challenge the probation report which claimed "it was a little too late." *Id.* at 21. Ramirez also explained at length about what he has done within his "pod" to help other inmates, and a how he helped to stop a bank robbery. *Id* .at 21-22. Ramirez further expressed that it would be unfair that the probation department received an extension of time to submit documents and that he should be given the same time. *Id.* at 23. The court noted that the extension for the probation department was requested by Ramirez. *Id.* Further, the court explained that Ramirez had about two weeks from when the probation report was submitted to the date of sentencing to submit mitigation evidence, which the court felt was ample time. *Id.* The court reiterated that it felt it had the necessary information to render a reasoned and considered judgment given the information it received in Ramirez's *Romero* motion, trial, the probation report, and the information Ramirez proffered. *Id.* The court again expressed that it was fully aware of the many activities Ramirez had participated in while incarcerated. *Id.* The court further commended Ramirez for his progress but denied the motion for a continuance because there was no good cause for delay.

Accordingly, the trial court's denial of Ramirez's motion for a continuance was not arbitrary. The trial court provided two opportunities for Ramirez to justify his request and the court determined Ramirez's request was unnecessary because the court already had the information

Ramirez sought to produce. Moreover, nothing in the record indicates that the trial court's denial was prejudicial to Ramirez's sentence since his sentence was mandated by state law.

### 9.  Trial Counsel was Prejudicially Ineffective

Ramirez alleges that his trial counsel was prejudicially ineffective, in violation of his Sixth Amendment right to effective assistance of counsel.  Pet. 62-67, Dkt. No. 39-2. He asserts seven specific instances where his counsel was ineffective: (1) failure to request to be relieved based on the alleged conflict of interest in claim two; (2) failure to investigate Ramirez's case; (3) failure to challenge for cause jurors four and seven; (4) failure to file pretrial motions to strike Ramirez's prior convictions as invalid either on statutory or constitutional grounds; (5) failure to present an intoxication defense at trial; (6) failure to cross-examine witnesses; and (7) failure to present mitigating evidence at Ramirez's sentencing hearing. *Id.*

The Sixth Amendment provides a criminal defendant the right to the effective assistance of counsel. U.S. Const. amend. VI. A claim of ineffectiveness assistance of counsel requires a defendant to show two components. *Strickland,* 466 U.S. at 688. First, the defendant must show that counsel's performance was deficient and unreasonable. *Id.* at 686- 688. Specifically, the defendant must show that the errors made were "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 686- 688. Second, the defendant must show that counsel's performance prejudiced the defense. *Id.* This requires a showing that the errors were so serious so as to deprive the defendant of a fair trial. *Id.* When considering the first prong the court "must be highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In evaluating the second prong the court must consider whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant must make a showing of both in order for the court to determine that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* at 686-688.

Ramirez alleges seven different instances of ineffectiveness. Each claim is addressed individually below.

*United States District Court*
For the Northern District of California

1    First, Ramirez alleges that the two conflicts of interest alleged in claim two prevented DPD

2    Davis from providing effective assistance of counsel. Pet. 64, Dkt. No. 39-2 "Counsel owes client

3    duty of loyalty and a duty to avoid conflicts of interest." *Strickland,* 466 U.S. at 688. As addressed

4    above Ramirez's claim fails. Ramirez fails to assert how the first alleged conflict was an actual

5    conflict, as required to prove Sixth Amendment prejudice. *See Mickens,* 535 U.S. at 171 (holding

6    "an actual conflict of interest mean[s] precisely a conflict that affected counsel's performance—as

7    opposed to a mere theoretical division of loyalties"). Moreover, the trial court's appointment of

8    Rauch as conflict attorney and Rauch's inquiry into the potential conflict dispelled any potential

9    conflict. With regards to Ramirez's second alleged conflict, Ramirez fails to show how this conflict

10   adversely affected his counsel's performance with respect to his proceeding. *See Strickland*, 466

11   U.S. at 692 (*quoting Cuyler,* 446 U.S. at 346 ("Prejudice is presumed only if the defendant

12   demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of

13   interest adversely affected his lawyer's performance.'"). Accordingly, the alleged conflict of interest

14   did not render DPD Davis ineffective.

15      Second, Ramirez alleges that DPD Davis's failure to investigate his case was prejudicial and

16   undermined his right to effective assistance of counsel.  As discussed in claim six, Ramirez was

17   heard at length about his concerns with DPD Davis's alleged lack of investigation at his October 3,

18   2000 and January 10, 2001 hearings to substitute counsel. Pet'r Ex. 6A, and 6D, Resp't Ex. N. Dkt.

19   No. 142. At the hearings, Ramirez complained that he did not have one investigator assigned to his

20   case. Pet'r Ex. 6D, Resp't Ex. N., Rep. Tr. 01/10/2001 at 5, Dkt. No. 142. Ramirez expressed that he

21   felt that because the prosecution presented exhibits on distance and where individuals were located

22   there should have been an investigator to verify. *Id.* DPD Davis explained that given the facts in this

23   case there was nothing to investigate. *Id*. at 15. DPD Davis also explained that he had one

24   investigator assigned to all of his cases who is very competent and always available. *Id*. With regard

25   to possible identification issues Ramirez felt could have been investigated, DPD Davis stated that he

26   did explore identification issues and cross-examined witnesses about their opportunity to view the

27   suspect. *Id*. at 14-15. DPD Davis also explained that because Ramirez was caught in the victim's

28   home and then escaped out the backdoor and was apprehended by the neighbor there was no

     reasonable defense to identification. *Id*.  DPD Davis further explained that the prosecution had the

burden, and they produced a map to scale of the scene and it would have been unnecessary for him to present the same evidence. *Id*. at 15.  The trial court acknowledged that while Ramirez was understandably frustrated with the outcome of his case, DPD Davis was competent and represented Ramirez vigorously. *Id*. at 18 The court further expressed that DPD Davis was not a "magician" and that Ramirez was stuck with the facts as they existed and that the end result had nothing to do with a lack of advocacy.  *Id*. at 18-19.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, when assessing if counsel was ineffective, a decision "not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*. Given the facts in this case it seems that the type of investigation Ramirez suggests would have been futile. *See Rupe,* 93 F. 3d at 1445 ("failure to take a futile action can never be deficient performance"). Ramirez has failed to identify any evidence that DPD Davis could have discovered as a result of investigation that could have likely changed the outcome of his case. Accordingly, his claim fails.

Third, Ramirez claims that DPD Davis was ineffective when he failed to challenge for cause or use a peremptory challenge to remove sitting jurors four and seven, that he claimed were bias in claim four.  Pet. 65, Dkt. No. 39-2. As discussed above, the test for juror bias is "whether the juror ... had such fixed opinions that [he] could not judge impartially the guilt of the defendant." *Patton*, 467 U.S. at 1035. Nothing in the record suggests the jurors had fixed opinions or could not judge Ramirez's guilt impartially. Moreover, Ramirez has not provided any evidence to support his allegations. Finally, the court inquired if any of the jurors' experiences would cause them to be impartial and all jurors stated that they could be fair and impartial. . Pet'r Ex. 5A, Resp't Ex. N, Rep.Tr. 3, Dkt. No. 142. With regard to DPD Davis not using his preemptory challenge under *Strickland*, the court is required to give deference to the latitude afforded trial counsel's tactical decisions. 466 U.S. at 689.

Fourth, Ramirez claims DPD Davis was ineffective because he failed to file pretrial motion to strike the prior allegations. Pet. 65, Dkt. No. 39-2.  Ramirez states that exhibits 10A (order transferring petition) and 10B (abstract of judgment- commitment form) clearly establish that there

United States District Court
For the Northern District of California

were statutory and constitutional grounds to bring a legitimate, valid challenge on several of the priors. *Id.* However, Ramirez fails to allege specifically on what basis DPD Davis should have attacked any of the priors. Ramirez also fails to allege how any motion would affect the outcome and whether there was a reasonable probability that any motion would have been successful.

Lastly, the court made its own motion to consider whether the priors should be stricken. Resp't Ex. B, Rep. Tr. 5/4/2000 at 26, Dkt. No. 127. At the hearing, the court stated that it would consider striking the priors at sentencing or after the preliminary hearing. *Id.* At the same hearing, DPD Davis informed the court about issues related to Ramirez's priors which were explained in more detail in Ramirez's *Romero* motion. *Id.* at 27-32 and Rep. Tr. 9/14/2000 at 39. On September 14, 2000, the trial court considered striking Ramirez's priors at his *Romero* hearing. Resp't Ex. B, Rep. Tr. 9/14/2000 at 39-49, Dkt. No. 127. Accordingly, Ramirez's claim DPD Davis was ineffective because he failed to file a pretrial motion to strike the prior allegations is unfounded.

Fifth, Ramirez claims that DPD Davis was ineffective because he failed to present a defense of addiction. Pet. 65, Dkt. No. 39-2. In *United States v. Appoloney*, the Ninth Circuit addressed whether the Defendant's counsel was ineffective because he did not present a defense. 761 F. 2d. 520, 525 (9th Cir. 1985). The court held that "a decision not to put forth a defense may be a conscious strategic option" especially when "viewing 'the totality of the evidence', the case against the Defendant was overwhelming." *Id.*

Here, it was reasonable for DPD Davis to not present a voluntary intoxication defense to negate Ramirez's intent to commit burglary. *See People v. Reyes* 52 Cal.App.4th 975, 982–986 (1997) (voluntary intoxication is not an affirmative defense to a crime, though a jury may consider evidence of voluntary intoxication and its effect on the defendant's required mental state). Arguably presenting evidence of addiction may have made the jury question Ramirez's intent but it is equally likely that such evidence could have prejudiced Ramirez and allowed the prosecution to probe other issues. Moreover, like *Appoloney,* there was such overwhelming amount of evidence of guilt that it was not likely such a defense would have been effective.

Finally, while Ramirez has asserted a long history of addiction, he has failed to allege what evidence of intoxication could have been presented by counsel. The record reflects that DPD Davis was well informed of Ramirez's history of addiction, which is evident when he presented such

information to the court at Ramirez's *Romero* hearing. Resp't Ex. B, Rep. Tr. 9/14/2000 at 39-49, Dkt. No. 127. As result, Ramirez has failed to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *See Strickland*, 466 U.S. at 689 (*quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Sixth, Ramirez alleges that DPD Davis was ineffective because he failed to confront Ramirez's accusers at trial and at his bifurcated jury trial. Pet. 66, Dkt. No. 39-2. The Sixth and Fourteenth Amendments guarantee a Defendant a right "to be confronted with the witnesses against him." U.S. Const., amend. IV and XIV. However, the decision to cross-examine a witness is considered trial strategy. *Keidel v. Terry*, 105 F. App'x 149, 150 (9th Cir. 2004). Accordingly, "mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *See Gustave v. United States,* 627 F.2d 901, 904 (9th Cir.1980).

The record reflects that the prosecution called approximately eleven witnesses to testify against Ramirez at trial. Resp't Ex. B, Rep. Tr. Master Index at 6-7, Dkt. No. 127. DPD Davis cross-examined about half of the witnesses presented at trial. *Id.* Here, Ramirez has failed to allege why DPD Davis's failure to cross-examine certain witnesses or not cross-examine certain witnesses more extensively was unreasonable. Moreover, at Ramirez's October 3, 2000 motion to substitute counsel hearing, DPD Davis explained that he failed to cross-examine certain witnesses at length because he felt it would provide an opportunity for the witness to re-enforce their testimony. Pet'r Ex.6A, Resp't Ex. N. Rep. Tr. 10/03/2000 at 7, Dkt. No. 142. The trial court acknowledged that it is not always good trial strategy to push or appear to badger a witness, especially someone, like the victim in Ramirez's case, who may be fragile. *Id.* at 12. The court further stated that appearing to bully a witness could be a tactical mistake because doing so may excite sympathy in the minds of the jurors for the witness. *Id.*

With regard to Ramirez's second phase of trial, the trial on his prior convictions, the prosecution presented a fingerprint expert, and DPD Davis failed to cross-examine the witness. Resp't Ex. B, Rep. Tr. at 422, Dkt. No. 129. DPD Davis did, however, voir dire the witness about his qualifications as a fingerprint expert. *Id.* at 534. At this phase in the trial, the court found beyond a reasonable doubt that Ramirez suffered the five convictions alleged by the prosecution. *Id.* at 549-550. The jury then examined certified documents related to those five convictions and found that the

convictions occurred. *Id.* at 580-582.  The purpose of the second phase was not to re-try past crimes but for the prosecution to prove that a defendant suffered past convictions charged before they could be used as enhancements at sentencing. Thus, the only witness DPD Davis could have cross examined was the finger print expert. Again, Ramirez has failed to allege why DPD Davis's failure to cross-examine this witness was unreasonable or how a cross-examination of this witness would have caused a different outcome. Accordingly, Ramirez's claim fails.

Lastly, Ramirez alleges that DPD Davis was ineffective because he failed to prepare for Ramirez's sentencing hearing. Pet. 66, Dkt. No. 39-2.  Here, Ramirez has failed to show how DPD Davis failed to prepare for his sentencing hearing or what DPD Davis could have done differently. The record reflects that at Ramirez's January 10, 2001 sentencing hearing the court allowed Ramirez to speak at length about the mitigating evidence he would have liked to present to the court. Resp't Ex. B, Rep. Tr. 1/10/2001 20-32, Dkt. No. 130. Further the court heard DPD Davis discuss at length why the court should strike the prior convictions and provide Ramirez a lower sentence. *Id.* at 26-27. The court acknowledged Ramirez's concerns but stated that it was well aware of the information Ramirez wished to present and was well of aware the progress Ramirez had made through the *Romero* motion filed by DPD Davis. *Id.* at 23, 28-29.  Moreover, the court stated despite Ramirez's progress the court had an obligation to uphold and apply the laws of the state and could not in good conscience strike Ramirez's convictions. *Id.* Thus, nothing in the record suggests that DPD Davis was not prepared or that given Ramirez's criminal history any additional preparation or mitigation DPD Davis could have presented would have produced a different outcome. As a result Ramirez's last claim fails.

### 10.  Trial Court Jury Instructions on the Burden of Proof

Ramirez alleges that the jury was not properly instructed on the burden of proof. Pet. 68, Dkt. No. 39-2.   Specifically, Ramirez alleges that the jury should have been instructed to find the allegations that he suffered several prior convictions true under a clear and convincing standard. *Id.* Ramirez's claim is superfluous. The record reflects that the jury was instructed under instructions that stated "the People have the burden of proving the truth of these allegations. If you have a *reasonable doubt* as to whether any such alleged prior convictions are true, you must find the allegations to be not true." (emphasis added) Pet'r Ex. 11A, Resp't Ex. N, Rep. Tr. 435, Dkt. No.

142; CALJIC 17.26.l. Therefore, the jury was instructed to find the allegations under the proper and more demanding reasonable doubt standard.

### 11. Trial Court Bias

Ramirez claims that he was denied his due process right to have his proceeding before a court that is fair and impartial. Pet. 71, Dkt. No. 39-2. Specifically, Ramirez alleges that the trial court judge was biased because she denied Ramirez's motions, and showed favoritism to the prosecutor, which resulted in the proceedings being fundamentally unfair, and prejudicial. *Id.* at 73

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, (1955). However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555 (1994). The defendant must show that the judge "relied upon knowledge acquired outside such proceedings or displayed deep-seated and unequivocal antagonism that would render a fair judgment impossible." *Id.* at 556. As discussed above, the trial judge's rulings on Ramirez's motions were reasonable and fair. There is nothing in the record to suggest that the trial court was partial or unfair.

### 12. Appellate Counsel was Prejudicially Ineffective

Ramirez contends that appellate counsel was prejudicially ineffective because counsel failed to allege the claims asserted in Ramirez's habeas petition on direct appeal. Pet. 78-79, Dkt. No. 39-2.

In *Smith v. Robbins*, the Supreme Court held that the proper standard for evaluating a habeas claim that appellate counsel was prejudicially ineffective is articulated in *Strickland*. 528 U.S. 259, 285 (2000). Accordingly, a petitioner must first show that counsel was objectively unreasonable. *Id.*; *Strickland,* 466 U.S. at 687–691. If a petitioner succeeds in such a showing, he then has the burden of demonstrating prejudice, meaning he must show a reasonable probability that, but for his counsel's unreasonable conduct, he would have prevailed on his appeal. *Id.*

The record reflects that Ramirez's appellate counsel raised two issues. First, that Ramirez was denied his right to have a jury determine all factual issues pertaining to the alleged prior convictions. Resp't Ex. D, Appellant's Opening Br. at 7, Dkt. No. 132. Second, that Ramirez's 50 year sentence was cruel and unusual punishment under both the federal and state constitution. *Id.* at 20. Ramirez claims that his appellate counsel's failure to raise and argue the claims presented in his

habeas petition arguably could have resulted in a reversal of Ramirez's conviction. Pet. 78-79, Dkt. No. 39-2.

It is reasonable for appellate counsel to fail to raise an issue because she foresees little or no likelihood of success on that issue. *See Miller v. Kenney*, 882 F.2d 1428, 1434 (9th Cir. 1989) ("the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy"); *see also Pollard v. White*, 119 F. 3d 1430, 1435 (9th Cir. 1997) ("A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court."). There is nothing to suggest that including the claims Ramirez's suggests would have led to a successful appeal. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal"). Accordingly, appellate counsel's failure to raise Ramirez's habeas claims did not constitute ineffective assistance of counsel.

Because the court finds that none of Ramirez's arguments have merit, the motion for evidentiary hearing is also denied.

### III. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. § 2254 (effective December 1, 2009). For the reasons set out in the discussion above, petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is denied.

## IV. ORDER

For the foregoing reasons, the petition for writ of habeas corpus is denied, and a certificate of appealability will not be issued.

DATED: October 21, 2014



RONALD M. WHYTE
United States District Judge